In re Fred T. HILLER, III d/b/a Hiller Properties, Hiller Construction and Hiller Real Estate, Debtor.

H. Christopher CLARK, Plaintiff,

v.

Fred T. HILLER, III d/b/a Hiller Properties, Hiller Construction and Hiller Real Estate, Defendant.

Bankruptcy No. 88–B–05775–E.
Adv. No. 92–1049–SBB.

United States Bankruptcy Court,
D. Colorado.

Dec. 10, 1992.

---

Elizabeth J. Greenberg, Denver, CO, for trustee/plaintiff.

Stephen W. Seifert, Thomas M. Pierce, Denver, CO, for debtor/defendant.

## MEMORANDUM OPINION AND ORDER [1]

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER came before the Court for trial on October 1, 1992 regarding the Trustee's Complaint objecting to the discharge of the Debtor. The Court, having conducted the trial, having reviewed all the evidence and record, and being fully advised, issues the following Memorandum Opinion and Order.

This adversary proceeding presents an issue of first impression. The central question in this case is whether a Chapter 7 Debtor, converted from a Chapter 11 case, may be barred from a discharge of debt pursuant to 11 U.S.C. § 727(a)(2), (3) or (4), for conduct occasioned, in pertinent part, during the Debtor's Chapter 11 case. The Debtor's case was converted from Chapter 11, in which case the Debtor (a) obtained confirmation of his Plan of Reorganization ("Plan"), (b) failed to fulfill his confirmed Plan, (c) failed to pay any unsecured claims after the Plan provided for substantial, or full, payment on all unsecured claims, and (d) transferred to his spouse, post-confirmation, certain significant non-exempt property.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW.

A. *General.*

1. The Debtor, Fred T. Hiller ("Debtor" or "Hiller"), was a real estate developer and property manager for about 25 years. At one time, Debtor owned (a) 400 apartments in Fort Collins, (b) rental properties in Vail, Minturn, Aspen, Denver and Aurora, Colorado, (c) development property in Arapahoe County, and (d) interests in partnerships which owned, or owned rights to, properties near the new Denver International Airport. Debtor has bought, sold, built, assembled financing for, and developed various real estate projects.

2. Hiller is a resident of the State of Colorado, the Debtor in the above-captioned bankruptcy case, and was the Debtor-in-Possession before the case was converted.

3. On May 3, 1988, Hiller commenced the above-referenced bankruptcy proceeding as a proceeding under Chapter 11, Title 11 of the United States Code.

4. Three and one-half years later, on October 2, 1991, Hiller's case was converted to a proceeding under Chapter 7 and, on October 4, 1991, H. Christopher Clark ("Trustee") was appointed to act as Trustee for the Chapter 7 Estate.

5. An Amended Plan of Reorganization ("Plan") dated December 27, 1989, was confirmed on June 1, 1990. The Plan provided for retention of Bankruptcy Court jurisdiction in certain situations, including resolution of disputes regarding interpretation of the Plan.

6. The Plan provided that, among other terms, all general unsecured claims would receive substantial or full payment, including interest at the legal judgment rate, on or before December 31, 1991.[2]

7. The Debtor's First Amended Disclosure Statement filed March 8, 1990 ("Disclosure Statement") provided, in pertinent part, that: "[T]he Plan will be accomplished through the Debtor's continued operation of rental units ... and by liquidation of all non-exempt assets of the estate to the extent necessary to satisfy claims." (Disclosure Statement, p. 25.)[3]

---

**1.** For purposes of clarification, this Memorandum Opinion and Order nominally supplements a prior Memorandum Opinion and Order issued December 4, 1992 for purposes of clarification. *See,* "II. *Discussion.*," page 612, and footnote 8, *infra.*

**2.** The Debtor's Disclosure Statement filed March 8, 1990 advised unsecured creditors that: "Class 9 [unsecured creditors] is unimpaired pursuant

to the Plan.... The Class 9 claims will be paid in full no later than December 31, 1991." (Disclosure Statement, p. 21.)

**3.** The Debtor's pre-confirmation representations that all non-exempt property would be sold "necessary to satisfy claims" was reiterated post-confirmation in writing, again, in his first "Interim Report" filed July 11, 1991 where Debtor stated, under oath: "It is anticipated all proper-

8. No Plan payments were made by Hiller after confirmation.[4]

9. The properties discussed in this Opinion were not, and were not claimed as, exempt properties.

10. General unsecured creditors holding claims in excess of $2.5 million were paid nothing under the confirmed Plan.

11. Debtor did not list his wife, Flora M. Hiller, as a creditor in his Petition Schedules originally filed with the Court. Thereafter, Debtor identified her in his Disclosure Statement as an unsecured creditor holding a claim for $219,453.36.

12. Debtor's wife filed Proofs of Claim, for unsecured claims, on November 2, 1988 for $219,453.36 and on April 16, 1990 for $273,475.00.

13. Mrs. Hiller filed a Proof of Claim, for a secured claim, on April 16, 1990 for $110,192.00. The collateral was identified as an interest in a Deed of Trust securing the Debtor's obligation to the Carpenters. (*See, infra,* Coronado Condo.)

14. Debtor and his wife dealt almost exclusively in cash with respect to personal transactions and finances at all times pertinent, post-petition and post-confirmation. This was done primarily to avoid post-petition creditor collection efforts, or problems related to post-petition debt.

15. Promissory notes, documentation, and reliable records reflecting purported loans or advances to the Debtor by his wife, and thus supporting the wife's unsecured and secured claims, are sparse and incomplete.

16. There are no assets in the Estate for the Chapter 7 Trustee to administer. There is, presently, little prospect of any dividend for creditors.

### B. *Blumenthal Judgment.*

17. On November 28, 1989, a principal judgment in the approximate amount of $1.7 million was entered in favor of Hiller and against Michael Blumenthal by the Arapahoe County District Court, Case No. 87–CV–1050, Division 5 ("Blumenthal Judgment").[5]

18. The Blumenthal Judgment was an asset of the estate.

19. There was no stay of execution on the Blumenthal Judgment.

20. In order to secure the Blumenthal Judgment, Hiller obtained a state court "charging order" attaching Blumenthal's interest in a partnership called Tower 64, which owns a large parcel of real estate near the new Denver International Airport site.

21. In the Disclosure Statement, Hiller stated that he expected Blumenthal's partnership share of the Tower 64 property to be sufficient to cover all or a portion of the Blumenthal Judgment. In footnote four of page 22 of the Disclosure Statement, Hiller advised creditors that:

> The value stated is the approximate total of the judgment with interest entered in Hiller v. Blumenthal, et al., Case No. 87 CV 1050, Arapahoe County District Court. In the same proceeding the Court entered judgment in favor of Blumenthal

ty will be sold ..." (Exhibit 27.) Debtor did iterate it, again in writing, in his second Interim Report, filed July 16, 1991, where he repeated that representation verbatim (Exhibit 28).

**4.** Several secured creditors have been paid in whole or in part, but only through post-confirmation foreclosures of real estate, or other payments derived from the collateral.

**5.** The actual judgment involved several elements including the following key features:
> That judgment enter in favor of Plaintiff Fred T. Hiller, III and against Defendant Michael Blumenthal in the principal sum of $1,999,-700.00, and interest at 8% per annum as provided by law from April 30, 1987, until paid.

> That judgment enter in favor of Defendant Michael Blumenthal and against Plaintiff Fred T. Hiller, III on Defendant Blumenthal's claim that he is entitled to acquire Plaintiff Hiller's interest in Tower 64. Hiller shall sell his 40% partnership interest in Tower 64 to Blumenthal for the sum of $165,567.40.
> Hiller shall pay to Michael B. the principal amount of $12,500.00, together with interest at the rate of 12% per annum, from January 22, 1987.
> Findings of Fact, Conclusions of Law and Judgment Order issued by Judge Deanna E. Hickman, November 28, 1989.

and against Hiller on the Tower 64 matter and ordered Hiller to sell his 40% interest in Tower 64 to Blumenthal for $165,567.40. It is expected that the Hiller judgment against Blumenthal can be satisfied by Blumenthal's interests in Tower 64. The value of the property owned by Tower 64 has been determined to be $11,000,000 through an appraisal done March 8, 1985 by B.K. Wischkowski, S.R.A. and reaffirmed March 15, 1985 by Don E. Boyson, S.R.A./M.A.I. and on March 23, 1987 by B.K. Wischkowski. Hiller's interest in Tower 64 is also subject to a lien held by Cherry Creek National Bank to secure a loan of approximately $200,000.

22. The Disclosure Statement also stated that the "[m]ajor risks inherent in the Plan of Reorganization include the risk that the judgment against Michael Blumenthal will become uncollectible due to the insolvency or bankruptcy of Blumenthal ... [and] ... Debtor is of the opinion that settlement with Blumenthal might include obtaining an interest in the Tower 64 limited partnership in exchange for satisfaction of all or part of the judgment, or a cash settlement." (Disclosure Statement, p. 26.)

23. The Plan also stated that the "Debtor will pursue collection of the judgment and will take all actions deemed necessary to preserve the judgment on reconsideration, appeal or otherwise." (*See,* Plan, p. 11, ¶ 9.3.)

24. On February 1, 1991, after Plan confirmation and after consulting with counsel, but acting *pro se,* Hiller entered into a settlement agreement with Blumenthal. That settlement provided for (a) satisfaction of the Debtor's entire $1.7 million Judgment, and (b) satisfaction of the additional $165,567.40 in principal due from Blumenthal to Hiller, for a total settlement payment by Blumenthal to Hiller of $161,-100.00. (*See,* Exhibit 6.) [6]

25. Hiller entered into these settlement negotiations and this settlement, whereby he gave up his rights under the $1.7 million Judgment, without informing his attorney of its final terms and conditions and without his attorney's advice or approval.

26. The $161,100.00 settlement was not a cash deal. It was to be and is a contingent obligation of the judgment debtor Blumenthal. The $161,100.00 did not have to be paid until there were proceeds from a sale of the Tower 64 real estate, which was the only significant asset in the Tower 64 partnership. The obligation has not been paid to date.

27. The Blumenthal Judgment is being appealed by both Hiller (now the Trustee) and Blumenthal, but the Colorado Court of Appeals has stayed the continuation of the appeal until the Bankruptcy Court rules on whether the appeal has become moot as a result of the settlement executed pre-conversion between Hiller and Blumenthal. There is another pending adversary proceeding in the Bankruptcy Court dealing with the enforceability of the settlement.

## C. *Coronado Condominium.*

28. At the time the Debtor commenced the bankruptcy proceedings, he was the joint owner with his wife, Flora Mae Hiller, of a certain condominium property located in Coronado, San Diego County, California (the "Coronado Condo").

29. The Coronado Condo had been purchased by the Debtor and his wife on December 19, 1985, from Allan Belmont Carpenter and Cecilia Lucy Carpenter (collectively the "Carpenters").

30. In the sale transaction, the Carpenters retained, but did not record, the deed of trust granted to secure payment of a portion of the purchase price (the "Carpenter Deed of Trust") until three and one-half years later, August 5, 1988, which was three months after Debtor's Chapter 11 was filed. The Carpenters also retained a life estate in an undivided one-half interest, in the Coronado Condo (the "Life Estate").

31. The Deed transferring the Coronado Condo to Debtor and his wife, the Carpen-

---

6. As part of various terms of the state court Order and Judgment, it turns out that this $161,-100.00 proposed settlement payment from Blumenthal is less than Hiller was to receive for his 40% interest in the Tower 64 partnership, which obligation was also reduced to judgment.

ter Deed of Trust, and reservation of the Life Estate, were not recorded in the San Diego County real estate records until August 5, 1988, again after the commencement of the Debtor's Chapter 11 case.

32. The approximate value of the Coronado Condo in May 1988, when Hiller filed for Chapter 11, was $280,000.00. The amount the Hillers owed the Carpenters, secured by the Deed of Trust, at the end of 1988 was approximately $38,000.00, down from $134,000.00.[7]

33. The approximate value of the Coronado Condo on June 1, 1990, the date of Plan confirmation, was $350,000.00. Perhaps $38,000.00 was owed on the Coronado Condo payable to the Carpenters by the Debtor and his wife at that time.

34. The Disclosure Statement did not fully and accurately characterize Hiller's interest in the Coronado Condo. Debtor's interest in the Condo was described as:

| | |
|---|---|
| Coronado Cays, # 97, California 25% interest as tenant in common: | $70,000.00 |
| Subject to lien of Carpenter | (134,000.00) |

35. As referenced in paragraph 13, above, Mrs. Hiller asserted a secured interest in the Carpenter Deed of Trust, but that interest was not identified or specifically treated in the Plan. Mrs. Hiller evidently did not record, or perfect, her purported secured interest in the Carpenter Deed of Trust until, evidently, after Plan confirmation. She did not take possession of the underlying Note.

36. On or about February 21, 1990 (post-petition, pre-confirmation), Debtor executed a deed of trust on the Coronado Condo in favor of his wife, Mrs. Hiller, as beneficiary. It was to secure a purported indebtedness to Mrs. Hiller in the amount of $28,000.00 (the "February Deed of Trust"). The February Deed of Trust was recorded in the San Diego County real estate records on June 25, 1990, after Plan confirmation. Said indebtedness was incurred, if at all, prior to Plan confirmation,

and was not timely disclosed to the Court or creditors.

37. On or about March 21, 1990 (again, post-petition, pre-confirmation), Hiller executed an additional deed of trust on the Coronado Condo, again with Mrs. Hiller as beneficiary, to secure a purported indebtedness to Mrs. Hiller in the amount of $110,-192.00 (the "March Deed of Trust"). Again, after Plan confirmation, the March Deed of Trust was recorded in the San Diego County real estate records on October 18, 1990. Said indebtedness was incurred, if at all, prior to Plan confirmation, and was not timely disclosed to the Court or creditors.

38. The December 19, 1985 sale transaction provided that if the Carpenters' Life Estate terminated before the Carpenter Note and Deed of Trust were paid, the full Coronado Condo Note balance would be extinguished. Mr. Carpenter died pre-confirmation and Mrs. Carpenter is over 80 years old. These facts were not disclosed in the Plan or Disclosure Statement.

39. Hiller stated that, post-confirmation, on or about August 30, 1990, he executed a Grant Deed transferring all of his right, title, and interest in the Coronado Condo to his wife in order to satisfy the debts to her secured by the February and March Deeds of Trust. The Grant Deed was recorded in the San Diego County real estate records on October 22, 1990. The value of the Coronado Condo at the time of conveyance was approximately $350,000.00.

40. The Debtor and his wife currently use the Coronado Condo for recreation, or vacation, purposes several weeks every year. They plan on retiring and living in the Coronado Condo after this proceeding is concluded.

D. *Uniflite Boat.*

41. At the time of the commencement of the Chapter 11 bankruptcy case, Hiller also owned an interest in a 1974 Uniflite boat (the "Boat"). Two to three months after Plan confirmation, Hiller transferred his interest in the Boat to his wife.

---

7. *See,* Exhibit 20. The Debtor and his wife owed, and knew they owed, only $84,000.00 to

the Carpenters as early as January 1986, over two years before the Debtor filed Chapter 11.

42. There apparently are no reliable documents or contemporaneous records reflecting the consideration paid to the Debtor by his wife for the Boat. Hiller and his wife variously maintain that the consideration paid by Mrs. Hiller for the Boat was $9,750.00, made through many small cash advances/loans over an uncertain period of time.

43. No proceeds received by Debtor from his wife for the Boat were used to pay Plan debts. Although Mrs. Hiller has evidently sold the Boat, the Debtor and his wife still have occasional access to and use of the Boat.

## II. DISCUSSION.

■ The Trustee seeks to bar the discharge of the Debtor's obligations pursuant to 11 U.S.C. §§ 727(a)(2)(A), 727(a)(3), and 727(a)(4)(A) and (a)(4)(C).[8] Absent this action by the Trustee, a Chapter 7 discharge would enter automatically and by operation of law. 11 U.S.C. § 727(a); *see,* Rule 4004(c), Fed.R.Bankr.P. The burden of proof is on the Trustee and he must carry that burden by a preponderance of the evidence. *In re Serafini,* 938 F.2d 1156 (10th Cir.1991); *see, Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

### A. *11 U.S.C. § 727(a)(2)(A).*

Section 727(a)(2)(A)[9] provides in pertinent part as follows:

**§ 727. Discharge.**

(a) The court shall grant the debtor a discharge, unless—

.    .    .    .    .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or con-

cealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition. . . .

11 U.S.C. § 727(a)(2)(A).

■ The burden of proof is on the Trustee to prove all the necessary elements of these transfers in order to bar a discharge under Section 727(a)(2)(A). *In re Martin,* 88 B.R. 319 (D.Colo.1988); *In re Booth,* 70 B.R. 391 (Bankr.D.Colo.1987); *In re Greenwalt,* 48 B.R. 804 (D.Colo.1985).

Those elements are: (1) that the act complained of was done at a time subsequent to one year before the date of the filing of the petition; (2) that the act was that of the debtor or his duly authorized agent; (3) that the act consisted of transferring, removing, destroying or concealing any of the debtor's property or permitting any of these acts to be done; and (4) that this was done with an intent to hinder, delay or defraud a creditor or an officer of the estate.

*Booth, supra* at 394.

■ The key and typically most difficult element of proof under Section 727(a)(2) is the "intent" element. Intent to hinder, or to delay, or to defraud, is seldom susceptible of direct proof, but the Court is allowed to, and often must, rely on circumstantial evidence, or an inference drawn from a course of conduct, to find the necessary intent. *Martin, supra,* at 322; *Booth, supra.* In this case, the Court is convinced the intent has been shown and all but one of the elements fully proven.

■ In this case, however, the key and most difficult element of the Trustee's burden of proof is the one-year, pre-petition time limitation, or "reach back" time

---

**8.** The debts and contractual obligations subject to this discharge action are (a) those part of, related to, or resulting from the Debtor's Plan and (b) those debts and obligations incurred post-petition, but which debts are generally treated as *pre-petition debts on conversion. See,* 11 U.S.C. § 348(d). The Debtor's Chapter 11 discharge of pre-petition debts and contractual obligations was not revoked, rescinded, or

voided by the conversion to Chapter 7. *See,* 11 U.S.C. §§ 1141(d)(1), 524(a). Nor was Debtor's discharge revocable pursuant to 11 U.S.C. § 1144.

**9.** Section 727(a)(2)(B) is not an issue presented to the Court in this adversary proceeding.

frame. The transfers of the Debtor objected to by the Trustee occurred post-petition.

The Trustee maintains that this glaring and obvious deficiency in his own position—that the transfers here complained of (the Deeds of Trust, Coronado Condo, Boat, and Blumenthal Judgment) occurred post-petition and not within one year, pre-petition—is resolved by invoking 11 U.S.C. § 348(d):

### § 348. Effect of Conversion.

.    .    .    .    .

(d) A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1307, or 1208 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

11 U.S.C. § 348(d).

In other words, the Trustee argues that the Debtor's post-petition, pre-conversion acts which create, or cause to be created, claims, are deemed, and "shall be treated for all purposes" as claims which arose "immediately before the date of filing the petition." It would then follow, the Trustee argues, that Section 727(a)(2)(A) would apply to bar Debtor's Chapter 7 discharge.

While an interesting theory and perhaps arguable, this Court believes the Trustee's reasoning is too strained, the concept is too foreign to the Code, and the case law is too tenuous to justify its application. While the Trustee's argument and characterization of the consequences of what can and will occur in circumstances where a confirmed Chapter 11 Debtor conveys properties, or interests in properties, not in accordance with the Plan and without fair consideration and/or to hinder, delay, or defraud creditors might well be accurate,[10]

the Code discharge provisions must be narrowly construed. They must be applied liberally in favor of the Debtor and strictly against the creditor or Trustee. *Booth, supra.*

The Debtor here is correct in rebutting this claim of the Trustee when he maintains that:

> The Trustee's attempt to circumvent the express language of the Code is unpersuasive....
>
> This statute [Section 348(d) ] ... applies to 'claims,' a term defined by § 101(5) of the Code, and in no sense of the word can a proceeding to deny a debtor's discharge be construed as a 'claim.' Cases addressing near-identical facts have held that § 348(d) is inapplicable in a discharge proceeding. *See, e.g.* [*Matter of*] *Pavlovich,* 952 F.2d 114, 118 (5th Cir. 1992) (in the context of post-confirmation, pre-conversion activity '[s]ection 348(d) simply does not address the availability of remedies against discharge and dischargeability. If it did, it would conflict with §§ 348(a) and (b)....').

Debtor's proposed Memorandum Opinion and Order, p. 14–15.

■ The Trustee has produced evidence of a quality and quantity sufficient to demonstrate that (a) the Debtor knowingly made and permitted to be made, the transfers to his wife with intent to hinder and delay, as well as defraud his creditors, and (b) the Debtor knowingly concealed and permitted to be concealed property of the Debtor. However, the Trustee must fail in his claim under Section 727(a)(2)(A) because of the time frame within which the objectionable acts and transactions occurred.

### B. *11 U.S.C. § 727(a)(3).*

Section 727(a)(3) provides in pertinent part as follows:

### § 727. Discharge.

---

10. "Taking this theory to its logical end, if neither § 727(a)(2)(A) nor § 727(a)(2)(B) applies as a matter of law, a debtor would be invited to lie and deceive his creditors regarding his assets throughout Chapter 11 proceedings, and would always obtain a Chapter 7 discharge after conversion, so long as the assets and deception are concealed for more than 180 days after confir-

mation of a Chapter 11 plan, after which time discharge cannot be revoked under 11 U.S.C. § 1144. [Footnote omitted.] This result is not in keeping with the spirit of the Code, and the Court rejects this theory." Trustee's proposed Findings of Fact and Conclusions of Law, p. 5–6.

(a) The court shall grant the debtor a discharge, unless—

.    .    .    .    .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. . . .

11 U.S.C. § 727(a)(3).

■ The Trustee invokes subsection (a)(3) claiming there is a paucity, or complete absence, of records and written documentation pertaining to various events and transactions. The Trustee argues that the Debtor has concealed, or has failed to keep or preserve, recorded information from which the Debtor's financial condition and transactions might have been ascertained.

The Court agrees with the Trustee. There is a curious and sometimes unexplained dearth of reliable written records, or complete absence of recorded information and reliable documentation. The Court can only conclude that the Debtor (a) has either concealed documents or existing recorded information, or (b) has failed to keep or preserve that kind of information in the first instance. Given the circumstances and the nature of the events and transactions involved, the absence of reliable recorded information is unjustified and essentially unexplained by the Debtor and his wife. This conclusion is reinforced still more in view of the Debtor's impressive and expansive experience in sophisticated business transactions and real estate development projects.

The Court reaches this conclusion, in part, on the cumulative impact of the non-exclusive list of the following elements [11]:

1.  Debtor and his wife dealt, virtually exclusively, in cash at all times post-petition. This occurred in routine matters as well as in important and/or substantial transactions. Reliable records of these cash transactions are sparse, incomplete, often non-existent.

2.  With respect to the Coronado Condo, Debtor's and Mrs. Hiller's title and lien documents, and pertinent information relating thereto, were concealed, not recorded, and not fully and accurately disclosed in the Debtor's Schedules. Thereafter, they were not accurately described in the Debtor's Disclosure Statement.

3.  Debtor concealed the unauthorized, post-petition February and March Deeds of Trust to his wife which were executed prior to confirmation. Few documents adequately disclose or describe the Debtor's purported obligations to his wife; his wife's unsecured and secured claims.

4.  The correct amount of debt owed to the Carpenters, their right, title, liens, and interests in the Coronado Condo, were concealed, or falsified, by the Debtor. The records and written documents pertaining to same were concealed, not recorded.

5.  Promissory notes, and consideration therefor, from Debtor to his wife were, in important part, not supported by books or records of the Debtor. This is particularly, but not exclusively, true with respect to the wife's purported $110,192.00 secured claim against Debtor.

6.  There are no reliable records and documentation which reflect the consideration Debtor's wife ostensibly paid to the Debtor in exchange for his conveying his interest in the Uniflite Boat to her.

7.  Debtor concealed the terms and conditions of his settlement on his and the estate's $1.7 million Judgment against Blumenthal. Debtor even went so far as to conceal that information and the settlement documents from his attor-

---

[11]. Several of these elements, however, standing alone, could bar the Debtor's discharge pursuant to subsection (a)(3).

ney.[12]

### C. *11 U.S.C. § 727(a)(4)(A) and (C).*

Subsections (a)(4)(A) and (C) read in pertinent part as follows:

**§ 727. Discharge.**

(a) The court shall grant the debtor a discharge, unless—

.        .        .        .        .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

.        .        .        .        .

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act. . . .

11 U.S.C. § 727(a)(4)(A) and (C).[13]

■ With respect to subsection (a)(4)(A), the Court concludes that this Debtor knowingly and fraudulently made a false oath and account in this case sufficient to bar his discharge.

A mere mistake or an inadvertent omission is not sufficient to bar a discharge of debt under this subsection. *Martin, supra.* However, this Court views the Debtor's misstatements, false and misleading representations, and failures to disclose to not be of that type. Rather they were material statements, made advertently, knowingly, and fraudulently.

At a minimum, the Debtor here made material misrepresentations, false and misleading statements, and omitted important, material information, in such a reckless and cavalier fashion that his conduct easily

qualified as making a false oath and account in, and in connection with, this case. '[R]eckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may give rise to the level of fraudulent intent necessary to bar a discharge.' *Diodati, supra,* 9 B.R. [804] at 808 (1981); *see also* [In re] *Bobroff, supra* 58 B.R. [950] 953 (1986) ('[t]he requisite intent under § 727 may be predicated on evidence of a pattern of reckless and cavalier disregard for the truth'); [In re] *Cycle Accounting Services, supra* 43 B.R. [264] at 273 (1984) (reckless indifference to the truth is sufficient to deny discharge). *Martin, supra* at 324.

The pattern of conduct by this Debtor from pre-petition, to the onset of the case, through disclosure statements, confirmation and post-confirmation activities, and his demeanor and credibility at trial, convince the Court that this Debtor acted, over time, to mislead and defraud his creditors and misused the bankruptcy system.

The problem in ascertaining whether a debtor acted with fraudulent intent is difficult because, ordinarily, the debtor will be the only person able to testify directly concerning his intent and he is unlikely to state that his intent was fraudulent. [Citation omitted.] Therefore, fraudulent intent [under Section 727(a)(4)(A) ] may be deduced from the facts and circumstances of a case. *In re Calder,* 907 F.2d 953, 955–956 (10th Cir.1990).

The "false oath and account" perceived by the Court is the product of those numerous elements referenced above which were

---

**12.** Shortly before the Debtor entered into the Blumenthal settlement, Debtor's counsel invited the Debtor to consult him and have any settlement for the Estate finalized in a correct and legally sufficient manner. This was, in counsel's words, to "avoid a lot of confusion and make clear that, if he [Blumenthal] did not pay, the agreement was null and void and would have no effect on all of your other rights to the full sum." Given the unfavorable terms and costly outcome of this settlement, and its disastrous impact on the Debtor's creditors, it is not surprising the Debtor kept his attorney ignorant

of the negotiations and final agreement. (*See,* Exhibits 6, 22, and 34.)

**13.** With respect to subsection (a)(4)(C), the Court is not persuaded by, and indeed it has not been fully informed and does not fully understand, the Trustee's position asserting the Debtor's discharge should be barred pursuant to this subsection (4)(C). *For those reasons and the implicit failure of the Trustee to carry Trustee's burden of proof in this regard, the Court shall deny the Trustee's claims under this section.*

not accurately or completely disclosed in the Debtor's bankruptcy Statements and Schedules. Thereafter, they were either not disclosed entirely, or they were inaccurately described, in the Debtor's Plan, Disclosure Statement, .and post-confirmation Interim Reports. Where the Debtor did disclose, or reference, a particular asset or transaction, it was not infrequently done in an oblique, incomplete, or confusing manner. The Debtor utilized ambiguity and obfuscation in a subtle, but effective manner, at various times during the full course of the Chapter 11 case.

The Debtor's Schedules, Statement of Affairs, and Disclosure Statement did not, for examples, fully or accurately (a) disclose the peculiarities, problems, and legal deficiencies pertaining to the Debtor's title and recordation of the Coronado Condo deed, Carpenter Note and Deed of Trust; (b) did not disclose that Mrs. Hiller claimed an encumbrance on, or interest in, the Carpenters' lien against the Coronado Condo; (c) did not reveal Mrs. Hiller's secured claim against the Debtor or the Debtor's granting of two post-petition, pre-confirmation Deeds of Trust to Mrs. Hiller; and (d) did not accurately reflect the value of the Coronado Condo, the obligation owing to the Carpenters, the Debtor's equity in the Condo, or Debtor's and his wife's full interest in the Condo. Moreover, the documents did not describe or communicate the Debtor's now argued position that the non-exempt Coronado Condo was not one of the assets to be liquidated to satisfy creditor claims.

The Debtor's Interim Reports filed, under oath, with the United States Trustee were, with regard to certain pertinent items, incomplete, ambiguous, and misleading. The entries were often merely cryptic references which, at best, only provided a cover for the Debtor to argue that he disclosed certain matters. Objectively, they reveal almost nothing. (See, Exhibits 27 and 28.) [14]

▮ When a Chapter 11 debtor-in-possession (a) files schedules, a reorganization plan, and a disclosure statement, that are, in certain respects, materially false, inaccurate and misleading, and (b) acts, post-confirmation, in a manner consistent with, or to perpetuate, a fraud or deception on the creditors, then that conduct qualifies to bar a discharge in bankruptcy pursuant to Section 727(a)(4)(A).

### III. CONCLUSION.[15]

For the reasons set forth above,

IT IS ORDERED that, with respect to the Trustee's Complaint seeking to bar the discharge of the Debtor's obligations:

1. The Trustee's claim pursuant to 11 U.S.C. § 727(a)(2)(A) is DENIED.

2. The Trustee's claim pursuant to 11 U.S.C. § 727(a)(3) is GRANTED.

   (A) the plan provides for the liquidation of all or substantially all of the property of the estate;
   (B) the debtor does not engage in business after consummation of the plan; and
   (C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title. 11 U.S.C. 1141(d)(3)(A), (B), (C).

This Court could conclude that, having found the Debtor engaged in pre-petition and post-petition conduct that warrants a bar to discharge in this converted Chapter 7 case, pursuant to Sections 727(a)(3) and (a)(4)(A), the Debtor likely would not have qualified for a discharge of debt pursuant to Section 1141(d)(3)(C) on confirmation of his Plan.

There is also the prospect that, given the Debtor's liquidating Chapter 11 Plan, he may well have not qualified for a discharge under Section 1141(d)(3)(A), as well.

---

**14.** The interim reports are signed as follows: I FRED T. HILLER III certify under penalty of perjury that I/we have read the answers in the foregoing post-confirmation Interim Report and that they are true and correct to the best of my/our knowledge, information and belief.

**15.** The Trustee has not presented to the Court and has not raised the issue of whether the Debtor was discharged of his debt and obligations on confirmation of the Plan in June 1990. The Trustee has not expressly requested an interpretation of the effect of confirmation of Debtor's Plan, or otherwise invoked the provisions of 11 U.S.C. § 1141(d)(3), which define and limit the discharge effectuated on confirmation of a Chapter 11 plan. Section 1141(d)(3) provides as follows:

§ 1141. **Effect of confirmation.**
[ (d) ](3) The confirmation of a plan does not discharge a debtor if—

3. The Trustee's claim pursuant to 11 U.S.C. § 727(a)(4)(A) is GRANTED.

4. The Trustee's claims pursuant to 11 U.S.C. § 727(a)(4)(C) are DENIED.

IT IS FURTHER ORDERED that the Debtor, Fred T. Hiller, III, d/b/a Hiller Properties, Hiller Construction and Hiller Real Estate, shall be and is hereby DENIED a discharge in bankruptcy pursuant to and in accordance with 11 U.S.C. § 727.