In re Fred T. HILLER, III d/b/a Hiller Properties, Hiller Construction and Hiller Real Estate, Debtor.

**H. Christopher CLARK,
Trustee, Plaintiff,**

v.

**Fred T. HILLER, III d/b/a Hiller Properties, Hiller Construction and Hiller Real Estate, Defendant.**

Bankruptcy No. 88–B–05775–E.
Adv. No. 92–1049–SBB.

United States Bankruptcy Court,
D. Colorado.

Nov. 23, 1994.

H. Christopher Clark, Trustee, Denver, CO.

Robert Padjen, Denver, CO, for plaintiff.

## MEMORANDUM OPINION

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER came before the Court for a hearing on October 18, 1994, regarding the Order issued September 21, 1994 by the Honorable Edward W. Nottingham of the United States District Court for the District of Colorado. The issue presented is a matter of first impression before the Bankruptcy Court.

On September 21, 1994, Judge Nottingham ordered, *inter alia*, that this Bankruptcy Court "vacate the order of December 10, 1992, denying Hiller a discharge in the chapter 7 case" ("*Vacatur* Order"). This Court had denied the Debtor a discharge in bankruptcy, pursuant to 11 U.S.C. § 727, by way of a Memorandum Opinion and Order, *In re Hiller*, 148 B.R. 606 (Bankr.D.Colo.1992) ("Bankruptcy Court Opinion and Order" or "December 10, 1992 Opinion and Order").

For the reasons set forth below, this Court respectfully declines to vacate its December 10, 1992 Opinion and Order pending an order from the District Court explaining why the opinion should be vacated in light of *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, —— U.S. ——, 115 S.Ct. 386, 130

L.Ed.2d 233 (1994), *Oklahoma Radio Associates v. Federal Deposit Insurance Corp.*, 3 F.3d 1436 (10th Cir.1993), and other recent decisions holding that requests for *vacatur* based on a post-judgment settlement should not be routinely granted.[1]

This Court has considered (1) Judge Nottingham's September 21, 1994 *Vacatur* Order, (2) the Honorable Charles E. Matheson's July 25, 1994 Order Approving All Encompassing Settlement Agreement, (3) Judge Nottingham's July 25, 1994 Order and Memorandum of Decision affirming this Court's December 10, 1992 Opinion and Order, (4) Stipulation on Settlement of Objection to All Encompassing Settlement Agreement, executed July 14, 1994, and (5) All Encompassing Settlement Agreement and Motion for Approval of same, filed March 21, 1994.

As stated in this Court's December 10, 1992 Opinion and Order, this case involves a Debtor who was denied a discharge because he, "at a minimum[,] made material misrepresentations, false and misleading statements, and omitted important, material information, in such a reckless and cavalier fashion that his conduct easily qualified as making a false oath and account in, and in connection with, this case." *Hiller, supra,* at 615. This Court's December 10, 1992 Opinion and Order denying discharge to the Debtor pursuant to 11 U.S.C. § 727(a)(3) and (a)(4) was **affirmed** on appeal by Judge Nottingham by his Order and Memorandum of Decision, and Judgment, entered July 25, 1994.

During the appeal pending in the District Court, the Debtor, Fred T. Hiller, III, Debtor's wife, Flora Hiller, the Trustee, and others, negotiated an "All Encompassing Settlement Agreement" ("Settlement Agreement") which, in part, was to relieve the Debtor of this Bankruptcy Court's December 10, 1992 Opinion and Order barring a discharge of debt pursuant to 11 U.S.C. § 727(a)(3) and (a)(4).

Based on the Settlement Agreement, and pursuant to a motion filed by the Debtor and the Trustee in the U.S. District Court, Judge Nottingham issued his *Vacatur* Order. The *Vacatur* Order provides in pertinent part:

> In accordance with the parties' stipulation resolving the case, the matter is remanded to the United States Bankruptcy Court for the District of Colorado with instructions to vacate the order of December 10, 1992, denying Hiller a discharge in the chapter 7 case.

*Vacatur* Order, p. 1.

## I. BACKGROUND AND FACTS

Debtor, Fred T. Hiller ("Hiller"), was a real estate developer and property manager for about 25 years. At one time, Debtor owned (1) 400 apartments in Fort Collins, (2) rental properties in Vail, Minturn, Aspen, Denver and Aurora, Colorado, (3) development property in Arapahoe County, and (4) interests in partnerships which owned, or owned rights to, properties near the new Denver International Airport. Debtor has bought, sold, built, assembled financing for, and developed various real estate projects.

On May 3, 1988, Hiller commenced the above referenced bankruptcy proceeding as a proceeding under Chapter 11, Title 11 of the United States Code. An Amended Plan of Reorganization ("Plan") dated December 27, 1989, was confirmed on June 1, 1990. The Plan provided for retention of Bankruptcy Court jurisdiction in certain situations, including resolution of disputes regarding interpretation of the Plan.

The Plan provided, *inter alia*, that creditors holding approximately $2.5 million in unsecured claims would receive substantial or full payment, including interest at the legal judgment rate, on or before December 31, 1991. However, unsecured creditors holding those claims were ultimately paid nothing under the confirmed Plan.[2]

---

1. *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* —— U.S. ——, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994) was released by the Supreme Court **after** Judge Nottingham issued his *Vacatur* Order.

2. Debtor's Disclosure Statement provided that "Class 9 [the unsecured creditor class] is unimpaired ... and ... Class 9 claims will be paid in full no later than December 31, 1991." Disclosure Statement, p. 21. No payments, however, were made to unsecured creditors.

Three and one-half years after filing for bankruptcy, on October 2, 1991, Hiller's case was converted to a proceeding under Chapter 7 and, on October 4, 1991, H. Christopher Clark ("Trustee") was appointed to act as Trustee for the Chapter 7 Estate.

On June 1, 1992, the Trustee filed Adversary Proceeding No. 92–1049–SBB. In his Complaint, the Trustee alleged that, pursuant to 11 U.S.C. § 727, Hiller was not entitled to a discharge. The Trustee maintained that a discharge was not warranted because (1) Hiller's conduct constituted efforts to transfer assets to hinder, delay, or defraud creditors (§ 727(a)(2)), (2) Hiller concealed, destroyed, and/or unjustifiably failed to keep books and records (§ 727(a)(3)), (3) Hiller knowingly and fraudulently gave a false oath or account in his bankruptcy case (§ 727(a)(4)(A)), and (4) Hiller knowingly and fraudulently gave or offered to give or receive money or property for acting or forebearing to act in a certain manner (§ 727(a)(4)(C)).

Following a trial of the matter, this Court held that Hiller was not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(3) and (a)(4).[3] This Court set forth the following reasons for denying Hiller's discharge pursuant to 11 U.S.C. § 727(a)(3):

> There is a curious and sometimes unexplained dearth of reliable written records, or complete absence of recorded information and reliable documentation. The Court can only conclude that the Debtor (a) has either concealed documents or existing recorded information, or (b) has failed to keep or preserve that kind of information in the first instance. Given the circumstances and the nature of the events and transactions involved, the absence of reliable recorded information is unjustified and essentially unexplained by the Debtor and his wife. This conclusion is reinforced still more in view of the Debt-

or's impressive and expansive experience in sophisticated business transactions and real estate development projects.

> The Court reaches this conclusion, in part, on the cumulative impact of the non-exclusive list of the following elements.

*Hiller, supra,* at 614.

This Court then recited, in detail, seven separate acts found to be efforts at concealing, falsifying, or unjustifiably failing to keep books, records, or other documents and information relative to significant acts and transactions involving Debtor's property.

With regard to the denial of discharge pursuant to Section 727(a)(4)(C), the Court concluded that:

> At a minimum, the Debtor here made material misrepresentations, false and misleading statements, and omitted important, material information, in such a reckless and cavalier fashion that his conduct easily qualified as making a false oath and account in, and in connection with, this case.

> "[R]eckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may give rise to the level of fraudulent intent necessary to bar a discharge." *[In re] Diodati,* [ ] 9 B.R. [804,] 808 [ (Bankr.D.Mass.1981) ]; *see also [In re] Bobroff,* [ ]58 B.R. [950,] 953 [ (Bankr.E.D.Pa.1986) ] ("[t]he requisite intent under § 727 may be predicated on evidence of a pattern of reckless and cavalier disregard for the truth"); *In re Cycle Accounting Services,* [ ] 43 B.R. [264,] 273 [ (Bankr.E.D.Tenn.1984) ] (reckless indifference to the truth is sufficient to deny discharge).

> *In re Martin,* [88 B.R. 319,] 324 [ (D.Colo.1988) ].

The pattern of conduct by this Debtor from pre-petition, to the onset of the case, through disclosure statements, confirma-

---

**3.** Although the Court did not deny a discharge under Section 727(a)(2) because of the time period involved, it did find that:

> The Trustee has produced evidence of a quality and quantity sufficient to demonstrate that (a) the Debtor knowingly made and permitted to be made, the transfers to his wife with intent to hinder and delay, as well as defraud his credi-

tors, and (b) the Debtor knowingly concealed and permitted to be concealed property of the Debtor. However, the Trustee must fail in his claim under Section 727(a)(2)(A) because of the time frame within which the objectionable acts and transactions occurred.

*In re Hiller,* 148 B.R. 606, 613 (Bankr.D.Colo. 1992).

tion and post-confirmation activities, and his demeanor and credibility at trial, convince the Court that this Debtor acted, over time, to mislead and defraud his creditors and misused the bankruptcy system. When a Chapter 11 debtor-in-possession (a) files schedules, a reorganization plan, and a disclosure statement, that are, in certain respects, materially false, inaccurate and misleading, and (b) acts, post-confirmation, in a manner consistent with, or to perpetuate, a fraud or deception on the creditors, then that conduct qualifies to bar a discharge in bankruptcy pursuant to Section 727(a)(4)(A).[4]

*Id.*, at 615–16.

As noted above, the December 10, 1992 Opinion and Order of this Court was affirmed by Judge Nottingham on appeal. In his Order and Memorandum of Decision, issued on July 25, 1994, Judge Nottingham analyzed the reasoning and conclusions of this Court and found that discharge was properly denied pursuant to 11 U.S.C. § 727(a)(3) and 727(a)(4). Judge Nottingham concluded:

> The bankruptcy court reasonably interpreted Hiller's plan for reorganization under chapter 11 as requiring full payment of the general, unsecured claims. The bankruptcy court further properly denied the discharge of Hiller's obligations under 11 U.S.C.A. § 727(a)(3) and 727(a)(4)(A). Since Hiller has failed to identify any aspect of the bankruptcy court's decision requiring reversal, it is therefore ORDERED that the order and judgment of the United States Bankruptcy Court is AFFIRMED.
>
> Order and Memorandum of Decision, and Judgment, issued by Judge Nottingham July 24, 1994, p. 15.

On the same day that Judge Nottingham's Order and Memorandum of Decision affirming this Court's denial of discharge was is-

sued, Chief Bankruptcy Judge Matheson issued an order approving the Settlement Agreement among the parties in the main case, underlying Bankruptcy Case No. 88–B–05775–E (but not in this Adversary Proceeding). Thereafter, in response to the Order Approving the Settlement Agreement, and upon request of the parties, Judge Nottingham vacated his July 25, 1994 Order and Memorandum of Decision. Judge Nottingham remanded the matter to this Court to vacate the Bankruptcy Court's Opinion and Order of December 10, 1992, denying Hiller a discharge in his Chapter 7 case.

## II. DISCUSSION

The U.S. Supreme Court has recently ruled that *vacatur* of court opinions is not favored and is not to be routinely granted in the absence of exceptional circumstances justifying such action. *Bonner Mall, supra,* —— U.S. at ——, 115 S.Ct. at 392. In a unanimous decision, the Court held that voluntary settlements and agreements among litigating parties, which provide for *vacatur* of a lower court opinion, are not sufficient grounds, standing alone, on which a court should customarily vacate a lower court opinion. *Id.* Prior to the *Bonner Mall* decision, the Tenth Circuit, following the lead of the Seventh Circuit and the majority of other circuit courts, held that judgments should not be routinely vacated based only upon a request of the parties. *Oklahoma Radio, supra.* The law in this area, it clearly appears, requires that the party seeking *vacatur* of a decision based on a settlement agreement must show exceptional circumstances warranting *vacatur.*

> It is petitioner's burden, as the party seeking relief from the status quo of the appellate judgment, to demonstrate not merely equivalent responsibility for the mootness, **but equitable entitlement to the extraordinary remedy of vacatur.**

---

**4.** "The 'false oath and account' perceived by the Court is the product of those numerous elements referenced above which were not accurately or completely disclosed in the Debtor's bankruptcy Statements and Schedules. Thereafter, they were either not disclosed entirely, or they were inaccurately described, in the Debtor's Plan, Disclosure Statement, and post-confirmation Inter-

im Reports. Where the Debtor did disclose, or reference, a particular asset or transaction, it was not infrequently done in an oblique, incomplete, or confusing manner. The Debtor utilized ambiguity and obfuscation in a subtle, but effective manner, at various times during the full course of the Chapter 11 case." *Id.*, at 615–16.

*Bonner Mall, supra,* at ——, 115 S.Ct. at 392 (emphasis added).

The parties, and specifically the Debtor, have failed to show that such circumstances exist in this case; they have failed to even allege such circumstances. The record reveals that neither the District Court nor this Bankruptcy Court have been favored with any evidence justifying *vacatur* of this Court's December 10, 1992 Opinion and Order.

This Court respectfully declines to vacate its December 10, 1992 Opinion and Order for the following reasons: (1) when a case is rendered moot by settlement, *vacatur* should only be granted upon a showing of **exceptional circumstances**, (2) routine *vacatur* should be granted **only** in cases mooted by happenstance, not by agreement between the litigating parties, (3) routine *vacatur* allows parties to "buy precedent" and change history to suit their litigation interests, and (4) contrary to the argument of the parties, *vacatur* does not necessarily encourage settlement.

## A. VACATUR SHOULD ONLY BE GRANTED IN EXCEPTIONAL CIRCUMSTANCES

In *Oklahoma Radio, supra,* the Tenth Circuit, in an opinion expressly approved by all of the judges of the Court of Appeals, clarified its position regarding routine *vacatur* of opinions upon request of the parties. Following a decision by the Tenth Circuit in *Oklahoma Radio* the parties settled. The parties then filed in the Tenth Circuit Court of Appeals a Joint Motion of the Parties to Vacate the Decision of this Court on the Grounds of Mootness and Remand to the District Court with Directions to Vacate its Judgment and Dismiss Action. Relying heavily on the Supreme Court's reasoning in *United States v. Munsingwear, Inc.,* 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), the parties sought, as part of their settlement agreement, to have the decision by the Tenth Circuit vacated. Rather than allowing routine *vacatur* of the decision, and issuing an order requiring the district court to vacate its opinion, the Tenth Circuit reconsidered the propriety of *vacatur*.

The court is, of course, impressed with the importance of salutary settlements of controversies, with their consequent lessening of both the burden on the parties of costly litigation and the drain on judicial resources. Nevertheless, we are seriously troubled by the effort here, made for whatever reason, to cause the withdrawal of an opinion of this court and the nullification of its precedential effect. This arrangement of the parties, which would affect the precedent of this court, goes beyond the rationale of vacatur as explained in *Munsingwear,* i.e., to protect against future preclusive collateral estoppel effects on the parties to litigation, and reaches out to deprive our opinion of any precedential effect. Judge Posner has succinctly stated that the Seventh Circuit rejects such requests: "We vacate unappealable decisions, to prevent them from having a preclusive effect. We do not vacate opinions, to prevent them from having a precedential effect." *In re Smith,* 964 F.2d 636, 638 (7th Cir.1992).

*Oklahoma Radio, supra,* at 1437.

The Tenth Circuit, after reviewing case law from each of the circuits, found that policy considerations favoring routine *vacatur* were outweighed by the considerations against routine *vacatur*. Specifically, the Tenth Circuit was persuaded that the integrity and efficiency of the judicial system are better served by refusal to routinely vacate opinions. The Tenth Circuit agreed with the Third Circuit's statement that:

> "[A] judicial act by an appellate court, such as vacating an order or opinion of this court or the trial court, is a substantive disposition which can be taken only if the appellate court determines that such action is warranted on the merits. A provision for such action in a settlement agreement cannot bind the court."

*Id.,* at 1442, *quoting, Clarendon Ltd. v. Nu–West Industries, Inc.,* 936 F.2d 127, 129 (3rd Cir.1991).

The Tenth Circuit expressly overruled prior opinions "to the extent that they indicate that a settlement agreement by the parties may oblige us to withdraw our opinions." *Id.,* at

1444. The Tenth Circuit therefore refused to vacate its opinion.

 The Tenth Circuit's conclusions were advanced and reinforced by the recent Supreme Court opinion in *Bonner Mall.*

We hold that mootness by reason of settlement does not justify vacatur of a judgment under review. This is not to say that vacatur can never be granted when mootness is produced in that fashion. As we have described, the determination is an equitable one, and exceptional circumstances may conceivably counsel in favor of such a course. **It should be clear from our discussion, however, that those exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur—which neither diminishes the voluntariness of the abandonment of review nor alters any of the policy considerations we have discussed.** Of course even in the absence of, or before considering the existence of, extraordinary circumstances, a court of appeals presented with a request for vacatur of a district-court judgment may remand the case with instructions that the district court consider the request, which it may do pursuant to Federal Rule of Civil Procedure 60(b).

*Bonner Mall, supra,* —— U.S. at ——, 115 S.Ct. at 393 (emphasis added).

Routine *vacatur,* or *vacatur* upon request of the parties as part of a settlement agreement, is no longer justifiable pursuant to the case law. Pursuant to *Bonner Mall* and *Oklahoma Radio, vacatur* must be justified on the merits of the case before the court. Thus, the parties requesting *vacatur* must show exceptional circumstances and demonstrate why *vacatur* is warranted under the *Bonner Mall* standards.

## B. ROUTINE VACATUR IS ONLY APPROPRIATE IN CASES MOOTED BY HAPPENSTANCE

 Both *Bonner Mall* and *Oklahoma Radio* recognized that an opinion should be vacated when the case becomes moot through happenstance, as in *United States v. Munsingwear, supra.* In *Munsingwear,* the U.S. Supreme Court held that judgments should be vacated, when, because of events beyond the control of the parties, the case becomes moot while an appeal is pending. *Munsingwear* involved alleged violations of maximum price regulations. During the pendency of the appeal of the District Court judgment, the commodity was decontrolled, thereby mooting the appeal. The *Munsingwear* rule was to "clear[ ] the path for future relitigation of the issues between the parties and eliminate[ ] a judgment, review of which was prevented through happenstance." *Id.,* 340 U.S. at 40, 71 S.Ct. at 107.

In *Oklahoma Radio, supra,* the Tenth Circuit analyzed the extent to which the Supreme Court and the Circuit Courts of Appeal apply *Munsingwear* to cases which have become moot through settlement or through other actions of the parties. The Tenth Circuit concluded that *Munsingwear* does not require *vacatur* of prior opinions when mootness results from the action of a party, such as a settlement agreement. *Id.,* at 1439, *citing, Karcher v. May,* 484 U.S. 72, 108 S.Ct. 388, 98 L.Ed.2d 327 (1987). The Tenth Circuit's analysis in *Oklahoma Radio* was confirmed by the Supreme Court in *Bonner Mall:*

From the beginning we have disposed of moot cases in the manner " 'most consonant to justice' ... in view of the nature and character of the conditions which have caused the case to become moot." [Citation omitted] ... A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment. [Footnote and citation omitted] The same is true when mootness results from unilateral action of the party who prevailed below. [Citation omitted] Where mootness results from settlement, however, the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur. The judgment is not unreviewable, but simply unreviewed by his own choice. The denial of vacatur is merely one application of the principle that "[a] suitor's conduct in relation to the matter at hand may disentitle

him to the relief he seeks." [Citation omitted].

*Bonner Mall, supra,* — U.S. at ——, 115 S.Ct. at 391.

Thus, *Munsingwear* still stands for the proposition that opinions should be vacated when cases are mooted through events beyond the control of the parties. However, as explained above, *Munsingwear* does not provide adequate rationale for vacating decisions rendered moot by settlement between the parties, and thus for vacating this Court's December 10, 1992 Opinion and Order.

## C. BUYING PRECEDENT

Several courts have expressed the opinion that routine *vacatur* of opinions, upon request of the parties, as part of a settlement agreement, negatively impacts the integrity of the judicial system by allowing parties, after a decision has been rendered, to "buy precedent." Recently, Justice John Paul Stevens, in his dissent in *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.,* — U.S. ——, 114 S.Ct. 425, 126 L.Ed.2d 396 (1993), *cited with approval in, Bonner Mall, supra,* stated that routine *vacatur* is not appropriate when the case is rendered moot by a settlement of the parties.[5]

> While it is appropriate to vacate a judgment when mootness deprives the appellant of an opportunity for review, *United States v. Munsingwear,* 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), that justification does not apply to mootness achieved by purchase. Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur.
>
> *Id.,* at ——, 114 S.Ct. at 431 (Stevens, J., dissenting), *quoted in, Bonner Mall, supra,* — U.S. at ——, 115 S.Ct. at 390–91.

Courts have expressed concern that the deep pocket, institutional litigator, will wait until a judgment is rendered, and if it is unsatisfactory, offer a pecuniary incentive to the opposing party to settle, upon the condition that the agreement will require the courts to vacate their prior opinions. The institutional litigator is then free to relitigate the issues in later cases, without the impediment of adverse precedent. To the institutional litigator, the long-term effects of precedent are much more important than the immediate cost of settlement.

> Given this background of deference to majority common law, vacatur becomes an important litigation tool, particularly for institutional litigators who must return to court many times with the same arguments. When a court rejects the arguments of institutional litigators such as Jackson, an insurance company, the institutions are dealt a crippling blow not only in the case at bar but in future litigation. Vacatur allows disappointed litigators effectively to rewrite history. Vacatur allows them to control the direction and content of the jurisprudence—to weed out the negative precedent and preserve the positive—and create an artificially weighty and one-sided estimate of what comprises "the case law."
>
> *Benavides v. Jackson Nat'l Life Ins.,* 820 F.Supp. 1284, 1289 (D.Colo.1993).

▮ Courts have thus expressed a growing concern over the potential for abuse which arises from a policy of routine *vacatur* upon request of the parties. *See also, Manufacturers Hanover Trust Co. v. Yanakas,* 11 F.3d 381 (2nd Cir.1993); *Norman I. Krug Real Estate Investments, Inc. v. Praszker,* 22 Cal.App.4th 1814, 28 Cal.Rptr.2d 498 (1994). Our court system relies on precedent and the "weight of the case law." Such a system is based on the reasoned opinions of judges throughout the country. Each opinion becomes a part of the weight of the case law, unless it is reversed or vacated. Such a system can be tainted by allowing deep pocket litigators to routinely request *vacatur* of unfavorable precedent. As stated in *Benavides, supra,* at 1289, "the victor, notably, is typically not a repeat litigator and has little interest in preserving the precedential value

---

**5.** Pursuant to Supreme Court Rule 14.1(a), the majority refused to consider whether routine *vacatur* was appropriate, because the question was not properly before the Court.

of the judgment below. .... Economic prowess purchases more persuasive power than the marketplace of ideas and sound reasoning combined." For this reason, *vacatur* upon request of the parties, as part of a settlement agreement, is only appropriate in extraordinary circumstances.

■ In matters pertaining to denial of discharge pursuant to Section 727, a debtor's acquisition of *vacatur*, or purchasing of a favorable result through settlement, after sustaining an unfavorable result at trial—and, in this case, after affirmation on appeal—is highly problematic. Section 727 is the gatekeeper for allowing only honest debtors the extraordinary relief afforded by the Bankruptcy Code. It is a guardian of the bankruptcy system; it proscribes dishonest, deceptive, and disingenuous debtor conduct that is part of or related to the bankruptcy system; it upholds the integrity and stature of the bankruptcy process.

■ To set precedent that unfavorable dischargeability decisions can be routinely vacated and swept away by post-judgment settlements is a dangerous course, as well as a grave disservice to the bankruptcy system. The reasoning, rationale, and conclusions in *Bonner Mall* are every bit as applicable to bankruptcy cases as to others; and, perhaps, in dischargeability litigation, even more so.

## D. ENCOURAGING SETTLEMENT

It has been argued that routine *vacatur* encourages settlement. In fact, in many cases, *vacatur* is a key bargaining demand of the defeated party, for the precedential reasons set forth above. However, upon closer analysis, "vacatur provides no incentive for early settlement and in fact encourages litigants to roll the dice on a district court ruling so long as they can settle to pay their way out of both the ruling and the adverse precedent." *Benavides, supra,* at 1288, accord, *Bonner Mall, supra,* —— U.S. at ——, 115 S.Ct. at 392. Justice Stevens, in his dissent in *Izumi, supra,* clearly disagreed with the argument that routine *vacatur* encourages settlement:

Respondent argues that a policy of routinely vacating judgments whenever both parties so request will encourage settlement. It will, of course, affect the terms of some settlements negotiated while cases are pending on appeal, but there is no evidence that the number of settlements will be appreciably increased by such a policy. Indeed, the experience in California demonstrates that the contrary may well be true. [Footnote omitted.] Moreover, the facts of this case indicate that any benefit in the form of saving work for the appellate court will probably be offset by the added burdens imposed on trial courts in later proceedings. On the other hand, it seems evident that a regular practice of denying these motions unless supported by a showing of special circumstances will create added pressure to settle in advance of trial.

*Izumi, supra,* —— U.S. at —— – ——, 114 S.Ct. at 431–32.

Following Justice Stevens dissent in *Izumi,* the Supreme Court in *Bonner Mall* stated that: "[T]he judicial economies achieved by settlement at the district court level are ordinarily much more extensive than those achieved by settlement on appeal." *Bonner Mall, supra,* —— U.S. at ——, 115 S.Ct. at 393.

Upon review of the arguments, the case law and its own experience, this Court finds that *vacatur* does not necessarily encourage settlements early in litigation and, in fact, may encourage litigants to delay serious settlement discussions until after trial and pending an appeal.

■ For the foregoing reasons, the law does not support routine *vacatur* or *vacatur* in this case. There are no exceptional circumstances in this case which favor *vacatur*. *Vacatur*, if granted here, would be solely the product of the parties' settlement and request for *vacatur*, nothing more. The issues on appeal became moot, not by happenstance, but through the voluntary acts of the litigants, and specifically, the Debtor.[6] Judi-

---

6. The parties settled on the same day that the District Court issued an opinion affirming this

Court's December 10, 1992 Opinion and Order. Assuming that Hiller was dissatisfied with the

cial practice and public policy do not favor routine *vacatur* and this may be particularly true for dischargeability litigation.

## III. CONCLUSION

For the reasons set forth above, this Court finds that *vacatur* in this case is inappropriate and contrary to existing law. This Court therefore respectfully declines to vacate its December 10, 1992 Memorandum Opinion and Order, denying Debtor, Fred T. Hiller, III, a discharge in his Chapter 7 case.

District Court's July 25, 1994 Order and Memorandum of Decision affirming this Court's December 10, 1992 Opinion and Order, Hiller could have pursued an appeal. The fact that

Hiller relinquished his right to appeal is not sufficient grounds to warrant *vacatur* of this Court's December 10, 1992 Opinion and Order.