862 F.2d 1299
 Medicare&Medicaid Gu 37,612
In the Matter of MEMORIAL HOSPITAL OF IOWA COUNTY, INC.,
Debtor-Appellee.
Appeal of UNITED STATES DEPARTMENT OF HEALTH AND HUMAN
SERVICES and Blue Cross and Blue Shield United of Wisconsin.
 No. 88-1680.
 United States Court of Appeals,
Seventh Circuit.
 Submitted Sept. 27, 1988.
Decided Nov. 21, 1988.
 
 Lowell V. Sturgill, Jr., U.S. Dept. of Justice, Appellate Staff, Civil Div., Washington, D.C., Jerard J. Jensen, Whyte & Hirschboeck, Madison, Wis., for appellants.
 Sheree L. Gowey, Asst. U.S. Atty., Madison, Wis., for debtor-appellee.
 Before FLAUM, EASTERBROOK and RIPPLE, Circuit Judges.
 EASTERBROOK, Circuit Judge.
 
 
 1
 Litigants who settle their dispute while an appeal is pending often file a joint motion asking us not only to dismiss the appeal but also to vacate the opinion and judgment of the district court. We always deny these motions to the extent they ask us to annul the district court's acts, on the ground that an opinion is a public act of the government, which may not be expunged by private agreement. History cannot be rewritten. There is no common law writ of erasure. This court's orders denying requests to vacate opinions have been unpublished, with one exception that states but does not defend our approach, Fishman v. Estate of Wirtz, 807 F.2d 520, 585 (7th Cir.1986). As other circuits grant the sort of request we routinely deny, see Federal Data Corp. v. SMS Data Products Group, Inc., 819 F.2d 277 (Fed.Cir.1987); Nestle Co. v. Chester's Market, Inc., 756 F.2d 280 (2d Cir.1985); Kennedy v. Block, 784 F.2d 1220 (4th Cir.1986), we publish this opinion to explain the basis of our practice. See also Ringsby Truck Lines, Inc. v. Western Conference of Teamsters, 686 F.2d 720 (9th Cir.1982), which is in line with our approach.
 
 
 2
 Memorial Hospital of Iowa County, Inc., is a provider of medical services under the Medicare program. It is entitled to reimbursement to the extent statutes and regulations provide. Because it takes a long time to gather final accounting data and apply the complex regulations, the statute permits the government to make estimated payments. The entitlement may be more or less. If it is more, the government (through its "fiscal intermediary", Blue Cross and Blue Shield United of Wisconsin) makes up the difference; if it is less, the government recoups the excess by reducing future estimated or final payments. The problem in this case arose because Memorial Hospital filed a bankruptcy petition after receiving estimated payments but before the final computation, which revealed that it had been overpaid. The fiscal intermediary proposed to reduce future payments, as usual; Memorial remonstrated that the reduction would violate the "automatic stay" in bankruptcy under 11 U.S.C. Sec. 362(a)(3), (6). Instead of asking the bankruptcy court to lift the stay, or asking what course it should follow, the fiscal intermediary simply reduced the payments. The bankruptcy court held the intermediary in contempt of court, and the district court affirmed. 82 B.R. 478 (W.D.Wis.1988). It ordered the intermediary to restore the funds it had withheld and to pay Memorial's costs and attorneys' fees. The intermediary, joined by the Department of Health and Human Services, filed a notice of appeal. The parties then settled their dispute: the intermediary keeps what it has recouped so far (some $62,000), Memorial keeps the portion of the overpayment that had not been recouped by the time of the contempt finding (some $20,000), and the hospital surrenders its right to collect costs and fees in return for $11,500. The bankruptcy court approved this settlement.
 
 
 3
 The parties' motion in this court asks us to vacate the district court's opinion and judgment under United States v. Munsingwear, Inc., 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), contending that the settlement makes the case moot. It does not. The court may decline to approve the settlement, in which event the dispute is as live as ever. Ringsby, 686 F.2d at 721-22. Even Nestle held that a settlement does not moot the case, 756 F.2d at 282, although it concluded on other grounds that the district court's opinion should be vacated. A settlement while the case is on appeal is a reason why the losing party no longer wants the judgment reversed. The case is neither more nor less moot than it would be if the loser were satisfied with the judgment and complied without appealing. Cf. CFTC v. Chicago Board of Trade, 701 F.2d 653, 657 (7th Cir.1983). Compliance does not require the judgment to be set aside; compliance in part (the upshot of a settlement) should not be treated differently. When a case is settled in the Supreme Court, that Court dismisses the petition (or appeal) under its Rule 53 and does not vacate the judgment as moot. Munsingwear holds that the judgment in a moot case should be vacated to relieve the parties of collateral consequences when they were unable to obtain appellate review. The Department and its fiscal intermediary were not disabled from obtaining review; they have simply chosen, for reasons they deem sufficient, to forego the entitlement they possess.
 
 
 4
 Some parallels come to mind. When the Solicitor General confesses error in the Supreme Court, the parties agree on the appropriate outcome. It does not follow, however, that the Court either dismisses the petition as moot or vacates the judgment reflexively. The Court reviews the record, either resolving the dispute on the merits, as in Rinaldi v. United States, 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977), and Marks v. United States, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977), or remanding so that the court of appeals may reconsider in light of the litigants' new position, as in Thompson v. United States, 444 U.S. 248, 100 S.Ct. 512, 62 L.Ed.2d 457 (1980). If one litigant discontinues the conduct that aggrieves the other, the Court does not say that the dispute has become moot. Unless there is no possibility of recurrence--and there is one here, since the Department and its intermediary have retreated in this case without committing themselves to a new policy for the future--litigation may continue. Chicago Teachers Union v. Hudson, 475 U.S. 292, 305 n. 14, 106 S.Ct. 1066, 1075, n. 14, 89 L.Ed.2d 232 (1986); United States v. W.T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). Cf. Deposit Guaranty National Bank v. Roper, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) (defendant's tender to the plaintiff of the ad damnum in the case does not automatically make the dispute moot).
 
 
 5
 Although a settled case is not moot, the Second Circuit in Nestle, and the Federal Circuit in Federal Data, concluded that the court of appeals automatically should vacate the district court's judgment in order to promote settlements. If the opinion on the books is the sticking point, these courts believed, then the appellate court should remove the obstacle to peaceable resolution. It is hard to be against settlement. Any disposition that the parties to the litigation unanimously endorse has much to be said for it--it produces peace for the parties and frees scarce judicial time to attend to litigants who need it. A settlement is the parties' business. They may compromise just as they may reach any other (lawful) contract.
 
 
 6
 When the parties' bargain calls for judicial action, however, the benefits of settlement to the parties are not the only desiderata. The pact may affect third parties. So when the litigants wish to enter a consent decree, to use the office of the court, the judge does not automatically approve but must ensure that the agreement is an appropriate commitment of judicial time and complies with legal norms. E.g., Kasper v. Board of Election Commissioners, 814 F.2d 332, 338 (7th Cir.1987); Derrickson v. City of Danville, 845 F.2d 715 (7th Cir.1988). Just as it is inappropriate to approve a consent decree that calls for a profligate commitment of the court's resources, so it may be inappropriate to approve a settlement that squanders judicial time that has already been invested. The bankruptcy and district judges devoted many hours to this case and resolved it on the merits. Their decisions have persuasive force as precedent that may save other judges and litigants time in future cases. Some of this force would remain as long as the court's opinion were available to read; it does not vanish on vacatur, although such an order clouds and diminishes the significance of the holding. A judgment also has preclusive benefits for third parties to the extent explained in Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). See also Premier Electrical Construction Co. v. National Electrical Contractors Ass'n, Inc., 814 F.2d 358, 361-67 (7th Cir.1987). True, litigation is conducted to resolve the parties' controversies; precedent is a byproduct of resolving disputes rather than the raison d'etre of the judicial system. Hewitt v. Helms, 482 U.S. 755, 107 S.Ct. 2672, 2676-77, 96 L.Ed.2d 654 (1987); Alliance to End Repression v. City of Chicago, 820 F.2d 873, 876 (7th Cir.1987). When a clash between genuine adversaries produces a precedent, however, the judicial system ought not allow the social value of that precedent, created at cost to the public and other litigants, to be a bargaining chip in the process of settlement. The precedent, a public act of a public official, is not the parties' property. We would not approve a settlement that required us to publish (or depublish) one of our own opinions, or to strike a portion of its reasoning. To the extent an opinion permits the invocation of Parklane, it may have great value to strangers--a value that one or another party to today's case may try to appropriate in the settlement, but which is not theirs to sell. If parties want to avoid stare decisis and preclusive effects, they need only settle before the district court renders a decision, an outcome our approach encourages.
 
 
 7
 There is, moreover, a special interest when the adjudication in question holds one of the parties in contempt of court. Such an adjudication may vindicate not only an entitlement of a party--as the one in this case did--but also the authority of the court. See Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987). The automatic stay regulates the behavior of parties (and putative parties) in pending litigation. A party who thumbs his nose at the orderly processes of the court cannot expect to escape notice; and having attracted notice the litigant may not escape his desert by dismissing the case or walking away. See Szabo Food Service, Inc. v. Canteen Corp., 823 F.2d 1073, 1077-79 (7th Cir.1987); Muthig v. Brant Point Nantucket, Inc., 838 F.2d 600, 603-04 (1st Cir.1988). The parties may settle their private grievance, as they did here, by exchanging the universal medium, money. The judicial branch retains an interest in the orderliness of its own processes, however, an interest at least strong enough to preserve in the case books a record of the conclusion that a contempt occurred.
 
 
 8
 We are conscious, as the Second Circuit was in Nestle, of the dismay and frustration one party experiences when the other says: "we will satisfy your every demand, but only if the court expunges its opinion", and the court refuses to oblige. The person making the offer may be delighted to capitulate today provided it can avoid issue preclusion tomorrow. See Parklane. (This cannot, however, be the reason why the United States and its agent want to obliterate this precedent. See United States v. Mendoza, 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984), holding that offensive nonmutual issue preclusion does not apply to the United States.) The recipient of the settlement offer will see nothing but injustice if the court invokes some abstruse systemic interest as justification for balking. "Why am I to be held hostage to some interest that is no concern of mine?", the party is entitled to ask. Perhaps the judicial system has no answer that will satisfy such a party. The interests of litigants in general, however, lie with the orderly operation of a system of justice, one in which the conclusions of litigation are recorded and thus preserved for the future, one in which slightly higher costs in today's case may reduce the trouble encountered by litigants and judges tomorrow. Judges must have at heart the interests of other litigants in future cases, and hold them equal in weight with the interests of today's.
 
 
 9
 The opinions written in this case record two judges' solutions to a legal problem. These opinions may be valuable for other litigants and judges; they may also be useful to Memorial itself at another time. They will be left as they are. The parties may be free to contract about the preclusive effects of these decisions inter se (Memorial could promise, for example, not to plead this adjudication as preclusive in a future dispute, subject to any limits properly placed on such agreements); they are not free to contract about the existence of these decisions.
 
 
 10
 Anticipating that we would adhere to our usual practice and decline to vacate the opinions and judgment, the parties request in the alternative that we dismiss the appeal. This relief is available as a matter of course. An appellant may withdraw its appeal at any time. Since the parties have settled their dispute on terms that provide for no award of costs, the motion to dismiss the appeal is granted, and the case is dismissed, each side to bear its own costs.