In re ADMETRIC BIOCHEM, INC., Debtor.

Cummings Properties, LLC, Plaintiff,

v.

Kathleen Dwyer, Chapter 7 Trustee of Admetric Biochem, Inc., Defendant.

Bankruptcy No. 01–18351–JNF.
Adversary No. 02–1012.

United States Bankruptcy Court, D. Massachusetts.

June 16, 2003.

Jeffery B. Loeb, MacLean, Holloway, Doherty, Ardiff & Morse, P.C., Danvers, MA, for Chapter 7 Trustee.

David R. Suny, Woburn, MA, for Cummings Properties, LLC.

## MEMORANDUM

JOAN N. FEENEY, Chief Judge.

### I. INTRODUCTION

The matters before the Court are the "Motion for Approval of Settlement Stipulation" (the "Settlement Motion") and the "Motion to Vacate This Court's September 30, 2002 Summary Judgment Order" (the "Motion to Vacate"). The Chapter 7 Trustee (the "Trustee") and Cummings Properties, LLC ("Cummings") jointly filed the Settlement Motion; Cummings filed the Motion to Vacate. The Court heard the Motions on April 30, 2003 and directed the Trustee to file an affidavit setting forth the likely dividend to unsecured creditors were the Court to approve the Settlement Motion. On May 9, 2003, the Court issued an order requiring the Trustee to supplement service of the Settlement Motion by advising creditors that they had until June 6, 2003 to object to the proposed settlement between the Trustee and Cummings. No creditors objected. Accordingly, the Motions are ripe for decision. The issues presented include whether extraordinary circumstances exist warranting a decision by this Court to vacate its order of September 30, 2002.

### II. FACTS

The facts are not in dispute and are accurately summarized in the Court's Memorandum dated September 30, 2002, see *Cummings Properties, LLC v. Dwyer (In re Admetric Biochem, Inc.)*, 284 B.R. 1

(Bankr.D.Mass.2002), and the parties' Settlement Motion.

On August 25, 2000, approximately 14 months before it filed a voluntary Chapter 7 petition, Admetric executed a commercial lease with Cummings for premises totaling approximately 12,000 square feet located in Medford, Massachusetts. The lease was for a five-year term, beginning on October 1, 2000, with annual rent of $437,691, or $36,474.25 per month. 284 B.R. at 2. In conjunction with the execution of the lease, Cummings obtained a cash security deposit in the sum of $73,000 and was named as a beneficiary of a letter of credit in an equal amount, resulting in a total security deposit of $146,000. *Id.*

On September 6, 2001, Admetric and Cummings executed a "Summary Process Agreement for Judgment" pursuant to which the parties agreed that judgment would enter for Cummings " 'for possession only' " and that " 'this agreement for judgment is without prejudice to plaintiff's damages claim and defendant's defenses thereto and is not intended to alter the status quo of the damages claim and/or the defenses thereto.' " *Id.* at 4.

A consultant to the Board of Directors of Admetric told the chief executive officer of an entity known as Scion Pharmaceuticals, Inc. ("Scion") that the space formerly occupied by Admetric was available and advised him to contact a representative of Cummings. Cummings and Scion eventually negotiated a five-year lease for the space formerly occupied by Admetric pursuant to which Scion agreed to pay Cummings annual rent of $583,791, or $48,649.25 per month, beginning October 1, 2001, less than one month after Admetric executed the Agreement for Judgment. Under the Scion lease, Cummings would receive over $500,000 more in rent than it would have received from Admetric over the balance of the term of the original lease. *Id.*

On October 30, 2001, Admetric filed a voluntary Chapter 7 petition. On January 18, 2002, the Trustee removed the summary process proceeding to this Court. Cummings claimed $437,691, the maximum claim allowable under 11 U.S.C. § 502(b)(6), and it timely filed a proof of claim in that amount on March 11, 2002. *Id.* at 4–5.

In the decision of September 30, 2002, this Court found, *inter alia,* that the sum sought by Cummings from the Debtor's bankruptcy estate was grossly disproportionate to a reasonable estimate of its damages and constituted a penalty under the circumstances of the case. Additionally, the Court found substantial merit in the Trustee's position that the liquidated damages provision in the Debtor's lease with Cummings was contrary to public policy. The Court reasoned that it made "a mockery of Cummings' duty to mitigate damages" because Cummings obtained an Agreement for Judgment entitling it to possession on September 6, 2001 and Scion executed a new lease for the premises approximately three weeks later and began renting the property on October 1, 2001. Thus, the Court found that Cummings' liquidated damages claim was unenforceable and that Cummings could setoff from its security deposit only Admetric's monthly rent totaling $72,948.50 for August and September, 2001, together with charges totaling $515 and reasonable attorneys' fees. *Id.* at 11. The Court also ordered Cummings to submit a fee application to this Court and serve a copy on the Trustee and the United States Trustee. *Id.*

On October 22, 2002, Cummings submitted a fee application in the sum of $11,185 in attorney's fees and expenses. Additionally, it sought pre- and post-judgment in-

terest at the default rate under the lease in the sum of $14,880,22, as well as an order permitting it to set off the total sum of $99,528.72 from the $146,000 security deposit. The Trustee objected, asserting that Cummings was entitled to recover only $1,552.50 in attorney's fees in addition to the sum of $73,463.50 previously awarded to it by this Court.

On February 28, 2003, the Trustee and Cummings filed the Settlement Motion and Cummings filed the Motion to Vacate which are now before the Court. In the Settlement Motion, the parties represented that in full settlement of the controversies involved in the Court's summary judgment decision and Cummings' claim for attorney's fees, Cummings would pay the estate $62,471.28. The settlement was conditioned upon the entry of an order by this Court vacating its September 30, 2002 decision.

Citing *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir.1995), and *In re Anolik*, 107 B.R. 426, 429 (D.Mass.1989), the parties argued that, if the Trustee were to fully prevail, the estate would receive $70,984.00, whereas, if Cummings were to fully prevail, the estate would receive $46,471.28. They added that the settlement "will provide almost a full recovery while eliminating the risks inherent in any continued litigation," as Cummings "intends to appeal any final judgment entered in this matter, regardless of how its fee application is resolved." Settlement Motion at ¶ 11. Accordingly, the parties averred that the costs of an appeal, whether successful or not, would diminish or eliminate the recovery by the bankruptcy estate.

In support of the vacatur component of their settlement, the parties cited *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 29, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994), for the proposition that "[t]he equitable remedy of *vacatur* is available to a party aggrieved by a judicial order upon a showing of 'exceptional circumstances' warranting the relief sought." Settlement Motion at ¶ 13 (emphasis in original). They add that a trial court is authorized to vacate a judgment pursuant to Fed.R.Civ.P. 60(b), which is made applicable to bankruptcy cases pursuant to Fed. R. Bankr.9024 "in the exercise of its general equitable jurisdiction." *Id.* In further support of vacatur, the parties represented the following:

[T]he settlement will result in an immediate and substantial benefit to creditors, and will avoid potentially protracted and expensive litigation. This result is possible, of course, because CPL [Cummings] is willing to forego its right to appeal the decision and settle this case now, at a reduced recovery, simply because it desires to ameliorate the impact of the Summary Judgment Order, which arguably extends to non-bankruptcy accelerated rent claims that recur in state court.

*Id.* at 16.

Following the April 30, 2003 hearing the Court ordered the Trustee to file an affidavit with respect to the dividend that would be available to creditors if the Settlement Motion were granted. On May 7, 2003, the Trustee filed an affidavit in which she estimated an 8% dividend for timely filed unsecured claims, assuming payment of estimated administrative and priority claims, the entry of orders sustaining her objections to certain claims, and the amendment of certain claims.

## III. DISCUSSION

The parties' decision to compromise the amount of Cummings' claim satisfies the four-part test articulated by the United States Court of Appeals for the First Circuit in *Jeffrey v. Desmond*, 70 F.3d at 185.

This Court accepts the parties' representations that the compromise with respect to the amount of legal fees and other sums claimed by Cummings is beneficial to the estate and represents a recovery of 88% of the Trustee's claim in the amount of $70,984. Accordingly, the issue of whether this component of the settlement is appropriate is readily resolved in the parties' favor. The issue of vacatur, however, is much more troublesome.

A careful reading of the Supreme Court's decision in *Bonner Mall* compels the conclusion that vacatur is unwarranted in this case for several reasons. To understand those reasons, a summary of the facts and law in the *Bonner Mall* decision is warranted.

In *Bonner Mall*, U.S. Bancorp Mortgage Company ("Bancorp") moved for relief from the automatic stay, arguing that the debtor's proposed Chapter 11 plan was unconfirmable on the ground that the new value exception to the absolute priority rule did not survive enactment of the Bankruptcy Code. The bankruptcy court agreed and granted Bancorp's motion. On appeal the district court reversed the bankruptcy court, and the United States Court of Appeals for the Ninth Circuit affirmed its decision. Bancorp then petitioned for a writ of certiorari, which the Supreme Court granted. After briefing the merits to the Supreme Court, the debtor and Bancorp stipulated to a consensual plan of reorganization, which was confirmed by the bankruptcy court. 513 U.S. at 20, 115 S.Ct. 386. According to the Supreme Court, "[t]he parties agreed that confirmation of the plan constituted a set-tlement that mooted the case." *Id.* Bancorp, however, asked the Supreme Court to vacate the decision of the Ninth Circuit pursuant to 28 U.S.C. § 2106.[1]

The Court initially observed that the parties had agreed that vacatur must be decreed for those judgments whose review was " 'prevented through happenstance,' " 513 U.S. at 23, 115 S.Ct. 386 (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40, 71 S.Ct. 104, 95 L.Ed. 36 (1950)) or " 'became moot due to circumstances unattributable to any of the parties.' " 513 U.S. at 23, 115 S.Ct. 386 (citing *Karcher v. May*, 484 U.S. 72, 82, 108 S.Ct. 388, 98 L.Ed.2d 327 (1987)). The Court also observed that the parties had agreed that "vacatur must be granted where mootness results from the unilateral action of the party who prevailed in the lower court." 513 U.S. at 23, 115 S.Ct. 386. Thus, according to the Court, the only issue before it was "whether courts should vacate where mootness results from a settlement." *Id.* The Court then stated:

> Where mootness results from settlement ... the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur. The judgment is not unreviewable, but simply unreviewed by his own choice. The denial of vacatur is merely one application of the principle that "[a] suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks."

*Id.* at 25, 115 S.Ct. 386 (citing *Sanders v. United States*, 373 U.S. 1, 17, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), and *Fay v.*

---

1. Section 2106 provides the following:
   The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.
   28 U.S.C. § 2106.

*Noia,* 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837(1963)).

The Supreme Court determined that it was Bancorp's burden, as the party seeking relief from the status quo of the appellate judgment, "to demonstrate not merely equivalent responsibility for the mootness, but equitable entitlement to the *extraordinary remedy* of vacatur." *Id.* at 26, 115 S.Ct. 386 (emphasis supplied). It added: "[p]etitioner's voluntary forfeiture of review constitutes a failure of equity that makes the burden decisive, whatever respondent's share in the mooting of the case might have been." *Id.*

The Court then turned to public interest concerns, stating:

"Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.,* 510 U.S. 27, 40, 114 S.Ct. 425, 428, 126 L.Ed.2d 396 (1993) (Stevens, J., dissenting). Congress has prescribed a primary route, by appeal as of right and certiorari, through which parties may seek relief from the legal consequences of judicial judgments. To allow a party who steps off the statutory path to employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment would-quite apart from any considerations of fairness to the parties-disturb the orderly operation of the federal judicial system. *Munsingwear* establishes that the public interest is best served by granting relief when the demands of "orderly procedure," 340 U.S., at 41, 71 S.Ct., at 107, cannot be honored; we think conversely that the public interest requires those demands to be honored when they can.

513 U.S. at 26–27, 115 S.Ct. 386. Finally, the Court observed:

A final policy justification urged by petitioner is the facilitation of settlement, with the resulting economies for the federal courts. But while the availability of vacatur may facilitate settlement after the judgment under review has been rendered and certiorari granted (or appeal filed), it may *deter* settlement at an earlier stage. *Some* litigants, at least, may think it worthwhile to roll the dice rather than settle in the district court, or in the court of appeals, if, but only if, an unfavorable outcome can be washed away by a settlement-related vacatur. And the judicial economies achieved by settlement at the district-court level are ordinarily much more extensive than those achieved by settlement on appeal. We find it quite impossible to assess the effect of our holding, either way, upon the frequency or systemic value of settlement.

*Id.* at 27–28, 115 S.Ct. 386 (emphasis in original). The Court concluded:

We hold that mootness by reason of settlement does not justify vacatur of a judgment under review. This is not to say that vacatur can never be granted when mootness is produced in that fashion. As we have described, the determination is an equitable one, and exceptional circumstances may conceivably counsel in favor of such a course. It should be clear from our discussion, however, that those exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur-which neither diminishes the voluntariness of the abandonment of review nor alters any of the policy considerations we have discussed. Of course even in the absence of, or before considering the existence of, extraordinary circumstances, a court of appeals presented

with a request for vacatur of a district-court judgment may remand the case with instructions that the district court consider the request, which it may do pursuant to Federal Rule of Civil Procedure 60(b).

*Id.* at 29, 115 S.Ct. 386.

■ This Court finds that the equitable remedy of vacatur is not available to Cummings in this case. Unlike the procedural status present in *Bonner Mall,* where an appellate court was asked to vacate a lower court decision pursuant to 28 U.S.C. § 2106, this Court, a trial court, is being asked to vacate its own decision in the absence of an appeal or even the unconditional forfeiture of the appeal process. Section 2106 is simply unavailable as a vehicle for the relief requested by the parties, and *Bonner Mall* is inapplicable to the Motions.

■ Notwithstanding the above ruling, were this Court to utilize the extraordinary circumstances test articulated by the Supreme Court, Cummings has failed to satisfy that test. There are no extraordinary circumstances present in this case. Any decision this Court makes is simply not likely to alter the amount of the dividend to unsecured creditors to any significant extent. Moreover, as the First Circuit has recognized, "[t]he fact that a party conditions a settlement on achieving vacatur does not by itself provide the needed equitable circumstances. Such a rule would essentially remove the decision from the court and hand it to the parties, in violation of the *U.S. Bancorp* rule." *See Wal-Mart Stores, Inc. v. Rodriguez,* 322 F.3d 747, 750 n. 1 (1st Cir.2003).[2]

Thus, the public interest concerns discussed by the Supreme Court, are determinative. To paraphrase the Supreme Court, this Court finds that Cummings "rolled the dice" with respect to the cross-motions for summary judgment and is now attempting to wash away the unfavorable outcome. *See* 513 U.S. at 28, 115 S.Ct. 386.[3] Having found that the "secondary

**2.** In *Rodriguez,* the First Circuit approved a settlement involving vacatur. It recognized, however, that "[t]he government has an institutional interest in vacating adverse rulings of potential precedential value." 322 F.3d at 750. At the time of the decision, Rodriguez was the Secretary of Justice of the Commonwealth of Puerto Rico.

**3.** In *Clark v. Hiller (In re Hiller),* 179 B.R. 253 (Bankr.D.Colo.1994), the Court expressed the following view:

Courts have expressed concern that the deep pocket, institutional litigator, will wait until a judgment is rendered, and if it is unsatisfactory, offer a pecuniary incentive to the opposing party to settle, upon the condition that the agreement will require the courts to vacate their prior opinions. The institutional litigator is then free to relitigate the issues in later cases, without the impediment of adverse precedent. To the institutional litigator, the long-term effects of precedent are much more important than the immediate cost of settlement.

Given this background of deference to majority common law, vacatur becomes an important litigation tool, particularly for institutional litigators who must return to court many times with the same arguments. When a court rejects the arguments of institutional litigators such as Jackson, an insurance company, the institutions are dealt a crippling blow not only in the case at bar but in future litigation. Vacatur allows disappointed litigators effectively to rewrite history. Vacatur allows them to control the direction and content of the jurisprudence—to weed out the negative precedent and preserve the positive—and create an artificially weighty and one-sided estimate of what comprises "the case law." *Benavides v. Jackson Nat'l Life Ins.,* 820 F.Supp. 1284, 1289 (D.Colo.1993).

Courts have thus expressed a growing concern over the potential for abuse which arises from a policy of routine vacatur upon request of the parties. *See also, Manufacturers Hanover Trust Co. v. Yanakas,* 11 F.3d 381 (2nd Cir.1993); *Norman I. Krug Real Estate Investments, Inc. v. Praszker,* 22 Cal.

remedy of vacatur" is unavailable, Cummings must pursue the "primary route" of appeal to meet the demands of orderly procedure, unless relief under Rule 60(b) is available. *See* 513 U.S. at 26, 115 S.Ct. 386.

██ Only Fed.R.Civ.P. 60(b), made applicable to this proceeding by Fed. R. Bankr.P. 9024, is applicable to aid resolution of the Settlement Motion and the Motion to Vacate. Rule 60(b) provides in relevant part: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (6) any other reason justifying relief from the operation of the judgment."

The Court finds that the parties have failed to advance good and sufficient reasons for relief from the September 30, 2002 order. Although the parties have touted the results of the settlement and have argued that the Court's September 30, 2002 decision concerned merely a "fact-specific issue involving a mixed question of bankruptcy and state law, and thus does not have broad precedential significance," Settlement Motion at ¶ 16, the Court finds that those reasons do not justify relief from the operation of the judgment. Additionally, the Court finds that a refusal to grant the Settlement Motion would not result in such a precipitous decline in the already insubstantial dividend, estimated by the Trustee to be 8%, as to warrant a different outcome. The costs associated with any appeal by Cummings would not be unduly burdensome to the estate because the facts pertinent to the Court's September 30, 2002 decision are not disputed and the issue of law decided has been thoroughly briefed both prior to and during the bankruptcy case. Finally, a decision allowing the Motion to Vacate would not tend to encourage or facilitate settlement of cases involving similarly difficult issues. Rather, it would tend encourage creditors with financial resources to, in the words of the Supreme Court, "roll the dice," as they have the ability to out spend a cash-strapped Chapter 7 trustee or debtor-in-possession for purposes of controlling the direction and content of jurisprudence. *See Hiller*, 179 B.R. at 260–61.

## IV. CONCLUSION

In view of the foregoing, the Court hereby denies the Settlement Motion and the Motion to Vacate.

---

App.4th 1814, 28 Cal.Rptr.2d 498 (1994). Our court system relies on precedent and the "weight of the case law." Such a system is based on the reasoned opinions of judges throughout the country. Each opinion becomes a part of the weight of the case law, unless it is reversed or vacated. Such a system can be tainted by allowing deep pocket litigators to routinely request vacatur of unfavorable precedent. As stated in *Benavides, supra,* at 1289, the victor, notably, is typically not a "repeat litigator and has little interest in preserving the precedential value of the judgment below.... Economic prowess purchases more persuasive power than the marketplace of ideas and sound reasoning combined." For this reason, vacatur upon request of the parties, as part of a settlement agreement, is only appropriate in extraordinary circumstances.
*Hiller*, 179 B.R. at 260–61.